**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NORRIS CARLTON TAYLOR,
Petitioner-Appellant,

v.

No. 98-36

R. C. LEE,* Warden of Central
Prison, Raleigh, North Carolina,
Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CA-97-829-5-HC-F)

Argued: May 5, 1999

Decided: July 29, 1999

Before ERVIN, WILKINS, and KING,
Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Ervin wrote the
opinion, in which Judge Wilkins and Judge King joined.

_____

**COUNSEL**

**ARGUED:** James Richard Glover, GLOVER & PETERSEN, P.A.,

_____

*Taylor named James B. French, former warden of Central Prison
where Taylor is incarcerated, as Respondent in his petition. Subse-
quently, R. C. Lee succeeded French as Warden at that institution.

Chapel Hill, North Carolina; Gretchen Marie Engel, CENTER FOR DEATH PENALTY LITIGATION, Durham, North Carolina, for Appellant. Kendrick C. Fentress, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Michael F. Easley, Attorney General of North Carolina, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.

_____

**OPINION**

ERVIN, Circuit Judge:

The question before this Court is how to calculate the limitations period for federal habeas corpus petitioners who were in the middle of state post-conviction proceedings when the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed. See 28 U.S.C.A. § 2244(d)(2) (West Supp. 1999).

Norris Carlton Taylor ("Taylor") is on death row in North Carolina for murder. When the AEDPA was signed on April 24, 1996, Taylor was still undergoing state post-conviction proceedings. After exhausting his state remedies, Taylor filed a federal petition for a writ of habeas corpus in district court.

The district court dismissed Taylor's petition as barred by the statute of limitations. It did not toll a gap in time between stages of Taylor's state proceedings from Taylor's limitations period. Taylor disputed the district court's calculations. He asserted that the entire period of state post-conviction proceedings, from start to finish, should be tolled.[1] Agreeing that the district court should have tolled the entire period of state post-conviction proceedings, we reverse the dismissal and remand to allow the filing of Taylor's petition.

_____

[1] Taylor also argued on appeal that the district court should have tolled the period of time he took to seek certiorari review from the U.S. Supreme Court. Because our holding tolling the entire period of his state post-conviction proceedings is sufficient to allow Taylor to refile his petition, we do not address this issue.

2

I.

On July 10, 1979, a North Carolina jury found Taylor guilty of the murder and armed robbery of Mildred Murchison and the kidnapping, armed robbery, and assault with a deadly weapon with intent to kill of Malcolm Biles. On July 30, 1979, that same jury recommended that Taylor be sentenced to death. The North Carolina Superior Court judge then sentenced Taylor to death for Murchison's murder and to consecutive terms of imprisonment for the non-capital offenses.

For the next fourteen years, Taylor raised extensive state appellate and post-conviction challenges to his sentence before seeking federal relief. Starting with Taylor's application for federal relief, the relevant procedural history is summarized below:

July 6, 1993 Taylor filed his first federal petition for a writ of habeas corpus.

July 28, 1993 Taylor filed his second motion for appropriate relief ("MAR") in North Carolina Superior Court.

November 8, 1993 The federal district court dismissed Taylor's first petition without prejudice for failure to exhaust state remedies.

April 24, 1996 The AEDPA was signed into law.

May 16, 1996 The North Carolina Superior Court denied three of Taylor's claims in his MAR.

May 23, 1996 The North Carolina Superior Court denied the remainder of Taylor's claims in his MAR.

August 23, 1996 The transcript of the North Carolina Superior Court proceedings was completed and delivered to Taylor's counsel.

October 22, 1996 Taylor filed a petition for a writ of certiorari in the Supreme Court of North Carolina.

3

February 10, 1997   The Supreme Court of North Carolina issued an order reaching the merits of one of Taylor's claims, finding harmless error, and denying certiorari.

May 9, 1997         Taylor filed a petition for a writ of certiorari in the U.S. Supreme Court.

September 8, 1997   The last day for Taylor to file a habeas petition as argued by the State.

October 6, 1997     The U.S. Supreme Court denied certiorari.

December 9, 1997    The last day for Taylor to file a habeas petition as decided by the federal district court. The district court tolled an additional 121 days from the State's calculation to account for the transcript preparation.

February 2, 1998    Taylor filed his second federal petition for a writ of habeas corpus in federal district court.

February 18, 1998   The State of North Carolina moved to dismiss Taylor's petition as untimely.

June 9, 1998        The federal district court granted the State's motion and dismissed Taylor's second petition as untimely.

December 18, 1998   Taylor filed a notice of appeal and an application for a certificate of appealability.

January 14, 1999    The federal district court issued a Certificate of Appealability as to (1) whether the district court erred in dismissing Taylor's petition as untimely pursuant to 28 U.S.C.A. § 2244(d) and (2) whether the district court erred in its calculation of the limitations period.

4

II.

Taylor made two arguments on appeal. First, Taylor argued that the AEDPA should not apply to his case because his first federal petition for a writ of habeas corpus was dismissed without prejudice before the AEDPA was signed into law. Second, Taylor contended that the entire period of his state post-conviction proceedings should have been tolled from the limitations period of his second petition. The construction of a statute is a question of law that we review de novo. See Shafer v. Preston Mem'l Hosp. Corp., 107 F.3d 274, 277 (4th Cir. 1997).

A.

The threshold issue is whether the AEDPA applies to the current appeal. This Court has held that any federal petition for a writ of habeas corpus filed after the signing of the AEDPA on April 24, 1996 is governed by the AEDPA. See Brown v. Angelone , 150 F.3d 370, 372 (4th Cir. 1998). Although Taylor filed his first habeas petition on July 6, 1993, before the adoption of the AEDPA, this first petition was dismissed without prejudice by the district court because Taylor had not yet exhausted his state remedies. It specifically instructed Taylor in its order that he "must institute a new action as the instant case is closed." Taylor initiated such a new action only with his second habeas petition. Since he filed his second petition on February 2, 1998, well after the signing of the AEDPA on April 24, 1996, the AEDPA applies in this case. Accord Graham v. Johnson, 168 F.3d 762, 775-77 (5th Cir. 1999) (rejecting a similar argument).

B.

The second issue concerns the construction of Taylor's limitations period. We have already held that petitioners like Taylor who were still undergoing state post-conviction proceedings on April 24, 1996, had until April 23, 1997, under the AEDPA, to file a federal habeas petition. See Brown, 150 F.3d at 375-76. Both sides agree that the periods of time when Taylor's post-conviction filings were actually before a state court should be tolled from Taylor's limitations period. They disagree, however, over the period of time in between the North Carolina Superior Court's denial of Taylor's second MAR and Tay-

5

lor's filing of a petition for a writ of certiorari from the North Carolina Supreme Court.

This dispute centers on the interpretation of the word "pending" in § 2244(d)(2) of the AEDPA.[2] The State of North Carolina argued, and the district court agreed, that Taylor's state application for post-conviction review was "pending" only until the North Carolina Superior Court denied his second MAR. The State argued that the period of time between when the MAR was denied and when Taylor filed a petition for writ of certiorari from the North Carolina Supreme Court (152 days) should not be tolled. According to the State's calculation, Taylor's last day to file a habeas petition was September 8, 1997. The district court accepted the State's analysis, except that it tolled an additional 121 days to account for the State's transcript preparation, finding that "even the most diligent of state prisoners cannot prevent delays in the preparation of a transcript." The district court ultimately held that December 9, 1997, was Taylor's last day to file a habeas petition.

According to our research, of the federal appellate courts, only the Ninth and the Tenth Circuits have directly addressed this issue.[3] Both circuits have interpreted § 2244(d)(2) to toll the entire period of post-conviction proceedings. See Nino v. Galaza, No. 98-55563, 1999 WL 451783, at *1; 1999 U.S. App. LEXIS 14966, at *1 (9th Cir. July 6,

_____

[2] Section 2244(d)(2) of the AEDPA reads in relevant part:

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C.A. § 2244(d)(2) (emphasis added).

[3] In similar cases, the First and Eleventh Circuits tolled the entire period of state post-conviction proceedings when calculating limitations periods for specific petitioners. See Gaskins v. Duval, No. 97-2051, 1999 WL 447129, at *2 n.2; 1999 U.S. App. LEXIS 15061, at *4 n.2 (1st Cir. July 7, 1999) (observing that not tolling the gap in time would not have altered the disposition of the case); Guenther v. Holt, 173 F.3d 1328, 1331 (11th Cir. 1999) (tolling the entire period of time from the initial state post-conviction petition to the denial of certiorari by the Alabama Supreme Court).

6

1999) ("We conclude that . . . the time must be tolled for the entire period in which a petitioner is appropriately pursuing and exhausting his state remedies."); Barnett v. Lemaster , 167 F.3d 1321, 1323 (10th Cir. 1999) ("We conclude [that] the term[`pending'] must be construed more broadly to encompass all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies. . . .").

While not directly addressing this issue, the Supreme Court recently reinforced the Ninth and Tenth Circuits' reasoning. In O'Sullivan v. Boerckel, the Supreme Court held that a habeas petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. ___, ___, 119 S.Ct. 1728, 1732 (1999).

In contrast, our research indicates that the only court to adopt the State's "gap theory" in a published opinion is a district court in the Middle District of North Carolina. See Moseley v. French, 961 F.Supp. 889, 892 (M.D.N.C. 1997) ("The one-year period is given for the very purpose of preparing petitions, motions, etc. and, therefore, cannot be considered a tolling event."). In the current case, the district court's tolling of the additional 121 days for transcript preparation was not consistent with Moseley because that period was for the very purpose of preparing a motion.

After review, we find the reasoning of our sister Ninth and Tenth Circuits persuasive. We reject the gap theory for two reasons.

First, we agree with the district court that a transcript "is often a necessary part of the trial court record filed for appellate review" and that "the time required for the State to prepare and deliver the transcript" is "a matter completely out of a prisoner's control." Unfortunately, the gap theory does not allow for tolling of events such as transcript preparation.

Second, we believe that tolling the entire period of state proceedings upholds "[t]he principle of comity that underlies the exhaustion doctrine." Murray v. Carrier, 477 U.S. 478, 489 (1986). See Gaskins, 1999 WL 447129, at *2; 1999 U.S. App. LEXIS 15061, at *5

7

("Applying the tolling provision encourages respect for the principle of comity and compliance with the requirement that, ordinarily, a state prisoner must first exhaust his state court remedies before seeking federal habeas relief."). We agree with the Ninth Circuit that a "contrary construction would be antithetical to the entire theory of state remedy exhaustion and would inevitably lead to the filing of protective federal petitions." Nino, 1999 WL 451783, at *2; 1999 U.S. App. LEXIS 14966, at *6.

We therefore hold that under § 2244(d)(2) the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review), is tolled from the limitations period for federal habeas corpus petitioners who were already involved in state post-conviction proceedings on April 24, 1996.

III.

We reverse the district court's dismissal of Taylor's petition for a writ of habeas corpus and remand to allow filing.

REVERSED AND REMANDED

8